2021R01118/FMC/SB

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. André M. Espinosa |
| v. | : | Magistrate. No. 23-MJ-11127 |
| LEON HAYNES | : | **CRIMINAL COMPLAINT** |

I, Kenneth Long, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

## SEE ATTACHMENT A

I further state that I am a Special Agent with the Internal Revenue Service and that this complaint is based on the following facts:

## SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

/s/ Kenneth Long
_____
Kenneth Long, Special Agent
Internal Revenue Service—
Criminal Investigation

Special Agent Kenneth Long attested to this Affidavit by telephone pursuant to F.R.C.P. 4.1(b)(2)(A) on this 28th day of July 2023.

_____
Hon. André M. Espinosa
United States Magistrate Judge

2021R01118/FMC/SB

# ATTACHMENT A

## COUNTS ONE TO EIGHT
### (Aiding and Assisting in Filing False Tax Returns)

On or about the dates below, in the District of New Jersey, and elsewhere, the defendant,

**LEON HAYNES**,

and other individuals, known and unknown, did willfully aid and assist in, procure, counsel, and advise in the preparation and presentation to the Internal Revenue Service of Employer's Quarterly Federal Tax Returns, Forms 941, for the periods stated below, which were false and fraudulent as to a material matter, and which LEON HAYNES did not believe to be true and correct as to every material matter in that each return falsely reported that Individual-1's business ("Business A") had employees, paid wages, and was entitled to COVID-Related Tax Credits.

| Count | Approx. Date Received by IRS | Tax Period | Form 941 False Items |
|---|---|---|---|
| 1 | 2/23/2021 | 2020 Q2 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation;<br>iii. 13e, Total deposits, deferrals, and refundable credits |
| 2 | 2/23/2021 | 2020 Q3 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation;<br>iii. 13e, Total deposits, deferrals, and refundable credits |
| 3 | 2/23/2021 | 2020 Q4 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation;<br>iii. 13e, Total deposits, deferrals, and refundable credits |
| 4 | 6/12/2021 | 2021 Q1 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation; |

|   |   |   | iii. 13e, Total deposits, deferrals, and refundable credits |
|---|---|---|---|
| 5 | 7/20/2021 | 2021 Q2 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation;<br>iii. 13g, Total deposits, deferrals, and refundable credits |
| 6 | 10/06/2021 | 2021 Q3 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation;<br>iii. 13g, Total deposits, deferrals, and refundable credits |
| 7 | 6/12/2022 | 2021 Q4 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation;<br>iii. 13e, Total deposits, deferrals, and refundable credits |
| 8 | 6/12/2022 | 2022 Q1 | i. Line 1, number of employees;<br>ii. Line 2, wages, tips, and other compensation;<br>iii. 13e, Total deposits, deferrals, and refundable credits |

In violation of Title 26, United States Code, Section 7206(2).

## COUNT 9
### (Mail Fraud)

From at least as early as in or around November 2020, through in or around at least January 2023, in the District of New Jersey and elsewhere, the defendant,

**LEON HAYNES**,

knowingly and intentionally devised and intended to devise a scheme and artifice to defraud the Internal Revenue Service and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, including by filing false Forms 941 claiming COVID-related tax credits for the businesses described below, and, for the purpose of executing and attempting to execute such scheme and artifice, did transmit and cause to be transmitted by means of the mails in interstate and foreign commerce, the following:

| Tax Period | Business | Approx. Date U.S. Treasury Check Issued | Location Check Mailed From | Location Check Mailed To | Approx. Amount of Check Issued |
|---|---|---|---|---|---|
| 2021 Q2 | Leon's Tax Services Company | 8/24/2021 | Kansas City, Missouri | Bogota, New Jersey | $254,117.36 |

In violation of Title 18, United States Code, Section 1341.

## ATTACHMENT B

I, Kenneth Long, a Special Agent of the Internal Revenue Service, Criminal Investigation, having conducted an investigation and having discussed this matter with other law enforcement officers who have participated in this investigation, have knowledge of the following facts. Because this Complaint is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause. Unless specifically indicated, all dates described in this affidavit are approximate and all conversations and statements described in this affidavit are related in substance and in part.

### Background

1. At all times relevant to this complaint:

#### Individuals and Entities

   a. Defendant Leon Haynes ("HAYNES") was a resident of Teaneck, New Jersey and Bogota, New Jersey, who provided tax preparation services.

   b. Leon's Tax Services was a tax preparation company owned and operated by HAYNES, located in New Jersey.

   c. GHP Payroll and Business Services ("GHP") was a business owned and operated by HAYNES, located in New Jersey.

   d. CNL Rentals was a business owned and operated by HAYNES, located in New Jersey.

   e. Individual-1 resided in New Jersey and was a taxpayer who used HAYNES for tax preparation services. Individual-1 owned and operated a cosmetics business ("Business A").

#### Relevant Terms

   f. The Internal Revenue Service ("IRS") was an agency of the United States Department of Treasury ("U.S. Treasury") responsible for the ascertainment, computation, assessment, and collection of taxes, including employment taxes.

   g. A responsible person at a business was required to file quarterly an IRS Form 941—Employer's Quarterly Tax Return. The responsible person must supply the IRS with information about the wages paid

      by the business, the federal income taxes withheld from wages, and Social Security and Medicare taxes.

    h. IRS Form W-2, Wage and Tax Statement, reports wages paid by an employer to an employee and taxes withheld from those wages. It is issued by U.S. employers to employees and is filed by employers with the Social Security Administration.

## CARES Act, Employee Retention Credit, and Families First Coronavirus Response Act

    2.    The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, provided for an employee retention tax credit ("Employee Retention Credit" or "ERC"), designed to encourage businesses to keep employees on their payroll. Subsequent legislation (The Taxpayer Certainty and Disaster Tax Relief Act of 2020 and the American Rescue Plan Act) modified and extended the ERC.

    3.    The ERC was a refundable tax credit against certain employment taxes equal to 50% of the qualified wages an eligible employer paid to employees after March 12, 2020 and through December 2020. For 2021, the ERC was a refundable tax credit against certain employment taxes equal to 70% of the qualified wages an eligible employer paid to employees after December 31, 2020 and through September 2021.

    4.    For purposes of the ERC, an eligible employer was a business with operations that were partially or fully suspended due to governmental orders due to COVID-19 or a business that had a 50% decline in gross receipts as compared to the same quarter in 2019.

    5.    The ERC was capped at $5,000 per employee retained between March 13, 2020 and December 31, 2020, and up to $7,000 per employee per quarter retained between January 1, 2021 and September 30, 2021.

    6.    Qualified employers are only eligible to receive the ERC for employees, not contractors.

    7.    Qualified employers could access the ERC by reducing upcoming payroll tax deposits or requesting an advance credit (i.e., a direct refund payment to the employer) on a Form 7200 or a Form 941.

    8.    The Families First Coronavirus Response Act ("FFCRA") required certain employers to provide employees with paid sick leave ("Sick Leave) of up to 80 hours and expanded family and medical leave ("Family Leave") of up to 10 weeks for specified reasons related to COVID-19. FFCRA provided refundable tax credits

that reimburse employers for the cost of providing Sick and Family Leave wages to employees for leave related to COVID-19. FFCRA provided refundable tax credits that reimbursed employers for the cost of providing Sick and Family Leave wages to employees for leave related to COVID-19.

9.  Under the FFCRA, employers were eligible to receive tax credits for wages paid to employees on Sick Leave. For employees on Sick Leave because they were sick, employers could receive a credit equal to one dollar for every dollar in wages paid to an employee on Sick Leave, plus allocable health plan expenses and the employer's share of Medicare taxes, with a maximum of $5,110 per employee per quarter. For employees on Sick Leave to care for another, employers were eligible to receive a credit equal to two-thirds of every dollar in wages paid to an employee on Sick Leave, plus allocable health plan expenses and the employer's share of Medicare taxes, with a maximum of $2,000 per employee per quarter.

10. Under the FFCRA, employers were eligible to receive tax credits equal to two-thirds of every dollar paid to an employee on family leave with a maximum of $10,000 per employee per quarter, plus allocable health plan expenses and the employer's share of Medicare taxes. The maximum increased to $12,000 per employee per quarter for periods of leave taken after March 31, 2021 and before October 1, 2021.

11. An employer could not receive more in Sick and Family Leave credits than in wages actually paid to employees.

12. Employers could only receive Sick and Family Leave credits for employees, not contractors.

13. Together, the ERC and Sick and Family Leave credits are referred to herein as the COVID-Related Tax Credits.

14. Self-employed individuals are not eligible for COVID-Related Tax Credits under the FFCRA.

15. IRS Form 941 may be used to claim COVID-Related Tax Credits. The COVID-Related Tax Credits may be greater than the tax owed by the employer, resulting in a refund to the employer.

## Overview

16. From at least as early as in or around November 2020 through at least in or around May 2023, HAYNES prepared and filed with the IRS Forms 941 claiming COVID-Related Tax Credits for businesses he owned and on behalf of clients. According to HAYNES' clients, HAYNES told them that the government was giving out COVID-19 relief money for businesses and that they were eligible for the money because they had a business. To certain clients, he stated that the money was a grant.

17. More than 15 of HAYNES' clients confirmed that the Forms 941 HAYNES prepared and filed for them were false and fraudulent in that they falsely reported the number of each business's employees and the wages paid to those employees and falsely claimed COVID-Related Tax Credits. These clients did not provide HAYNES with the information reported on their business's Forms 941 despite HAYNES telling law enforcement that his clients provided all of the information he reported on his clients' Forms 941.

18. During the relevant period, HAYNES prepared and filed at least 1,387 false Forms 941, including fraudulent Forms 941 filed on behalf of his own businesses, claiming a total of approximately $124,751,995.08 in tax refunds to which HAYNES and his clients were not entitled, causing the U.S. Treasury to disburse at least $31.6 million in tax refunds.

19. HAYNES charged each client a fee of approximately 10% of the tax refund the client received from the U.S. Treasury. According to HAYNES, he charged this fee because, without him, the client could not get the money. Many of HAYNES' clients paid HAYNES in cash at his request.

20. HAYNES owned and operated at least three businesses during the relevant period: Leon's Tax Service, GHP, and CNL Rentals. During the relevant period, HAYNES filed a total of approximately 30 Forms 941 for those businesses, claiming approximately $4,330,239.67 in tax refunds based on the COVID-Related Tax Credits, which resulted in the U.S. Treasury paying HAYNES at least approximately $1,428,592.21.

21. His businesses did not have any employees and did not issue any Forms W-2. HAYNES told law enforcement his businesses had only hired contractors during the relevant time period. His businesses were, therefore, ineligible to receive the COVID-Related Tax Credits.

## Counts One through Eight:
## Aiding and Assisting in Filing False Tax Returns for Individual-1

22. HAYNES prepared and filed Forms 941 on behalf of Individual-1 for Business A, claiming COVID-Related Tax Credits for 2020 Quarter ("Q") 2 to Q4, 2021 Q1 to Q4, and 2022 Q1.

23. HAYNES approached Individual-1 in or around 2021 about government COVID-related relief. HAYNES explained to Individual-1 that the government was giving out "free money" to people who had a business.

24. Individual-1 subsequently confirmed that each of the Forms 941 HAYNES prepared and filed on Individual-1's behalf falsely claimed that Business A had employees, paid wages to those supposed employees, and was eligible for COVID-Related Tax Credits. Individual-1 did not provide HAYNES with the number of employees or wages reported on any of the Forms 941 HAYNES prepared and filed on behalf of Business A.

25. In fact, Business A had no employees and no payroll during the relevant period. HAYNES knew all of this because Individual-1 advised HAYNES, among other things, that Business A had no W-2 employees but only retained contractors.

26. Before submitting false and fraudulent Forms 941 for Business A, HAYNES did not review those forms with Individual-1. Likewise, HAYNES did not ask Individual-1 to sign or ask for authority to sign on Individual-1's behalf anything relating to the Forms 941.

27. HAYNES also falsified personal income tax returns that HAYNES submitted on Individual-1's behalf. Specifically, HAYNES prepared Individual-1's 2020 Individual Income Tax Return, Form 1040. On that form's Schedule C, HAYNES falsely reported that Business A had approximately $66,267 in contract labor expenses in 2020 and paid $0 in wages. But HAYNES reported different information in Business A's 2020 Forms 941. There, HAYNES indicated that Business A paid approximately $80,178 in wages for 2020 Q2 through Q4.

28. Individual-1 subsequently confirmed that both tax forms were false: in 2020, Business A did not pay approximately $66,267 in contract labor, as reported on the Schedule C, or approximately $80,178 in wages, collectively reported on Business A's 2020 Q2 through 2020 Q4 Forms 941. Nor did Individual-1 provide that information to HAYNES. Moreover, similar to the Forms 941, HAYNES prepared the Form 1040 without consulting Individual-1 and then called to tell Individual-1 how much Individual-1 owed the IRS.

29.     In total, HAYNES falsely claimed more than approximately $748,000 in tax credits on Individual-1's Forms 941 based on COVID-Related Tax Credits, as reflected in the chart below (all figures are approximate):

| Approx. Date Form 941 was Received by IRS | Tax Period | False Number of Employees Listed | False Wages Listed | False ERC Claimed | False Sick and Family Wages credit Claimed |
|---|---|---|---|---|---|
| 2/23/2021 | 2020 Q2 | 4 | $22,089.00 | $13,072 | $43,449 |
| 2/23/2021 | 2020 Q3 | 4 | $22,089.00 | $11,044 | $43,449 |
| 2/23/2021 | 2020 Q4 | 4 | $22,089.00 | $11,044 | $43,449 |
| 6/11/2021 | 2021 Q1 | 2 | $20,042.00 | $14,029 | $40,665 |
| 7/31/2021 | 2021 Q2 | 4 | $40,018.00 | $21,012 | $91,350 |
| 10/31/2021 | 2021 Q3 | 5 | $55,785.00 | $39,049 | $168,972 |
| 6/12/2022 | 2021 Q4 | 6 | $28,118.00 | $19,682 | $87,320 |
| 6/12/2022 | 2023 Q1 | 4 | $32,558.00 | - | $101,108 |

30.     The U.S. Treasury paid Individual-1 approximately $693,493 in COVID-Related Tax Credits based on the false claims on the above Forms 941.

31.     HAYNES requested a 10 to 15% fee from Individual-1 for preparing and filing the Forms 941. Individual-1 paid HAYNES approximately $10,000 in cash despite HAYNES requesting additional funds.

## Count Nine:
## The Mail Fraud Scheme

32.     From at least 2020 through 2022, LEON HAYNES purported to own and operate a tax preparation business, Leon's Tax Services, a payroll preparation business, GHP, and a car rental business, CNL Rentals.

33.     HAYNES falsely prepared and filed approximately 30 total Forms 941 claiming COVID-Related Tax Credits for those businesses for the tax periods 2020 Q2 through 2022 Q3.

34.     During an interview with law enforcement on or about February 27, 2023, HAYNES stated that his businesses only hired contractors. He stated he paid these individuals in cash and sometimes with checks.

35.     On HAYNES' 2020 and 2021 Forms 1040, Individual Income Tax Returns, which HAYNES prepared, he reported on Schedules C that none of his companies—Leon's Tax Service, CNL Rentals, or GHP Payroll—paid any wages. Instead, he reported those businesses paid contract labor.

36. Based on HAYNES' own statements, HAYNES' businesses were not eligible to receive any COVID-Related Tax Credits because they did not have any employees.

37. Nonetheless, for 2021, HAYNES falsely reported on Forms 941 approximately $305,145 in W-2 wages for Leon's Tax Services.[1]

38. The Forms 941 were also false on their face. In particular, in each Form 941 he filed, HAYNES claimed more in Sick and Family Leave wage credits than the total wages reported paying for each respective quarter.

39. Lastly, certain Forms 941 were facially false because HAYNES repeatedly attempted to cause the IRS to pay out a greater amount of ERC funds than allowed under the law. For example, on the CNL Rentals 2021 Q1 Form 941, HAYNES reported paying three employees approximately $45,018 in wages and claimed approximately $31,152.60 in ERC. The maximum qualified wages per employee was $10,000 and, at that time, the ERC was limited to 70% of the qualified wages. Thus, CNL Rentals was limited to claiming $21,000 in ERC for that quarter.

40. On Leon's Tax Service's 2021 Q1 Form 941, HAYNES again claimed a greater refund than was possible under the law. On that return, HAYNES reported paying approximately $70,741 in wages to eight employees and claimed an ERC of approximately $56,000. Because the maximum credit was 70% of every $10,000 paid to an employee, the maximum available ERC was just over $49,000.

41. In total, by filing approximately 30 false Forms 941 for his businesses, HAYNES claimed approximately $4,330,239 in tax refunds to which he was not entitled, thereby fraudulently enriching himself, as depicted below (all figures are approximate):

| Approx. Date Received by IRS | Tax Period | Form | Business | Refund Claimed |
|---|---|---|---|---|
| 11/8/2020 | 2020 Q2 | Form 941 | Leon's Tax Service | $77,753.64 |
| 11/8/2020 | 2020 Q3 | Form 941 | Leon's Tax Service | $62,651.64 |
| 1/19/2021 | 2020 Q4 | Form 941 | Leon's Tax Service | $104,852.81 |
| 4/9/2021 | 2021 Q1 | Form 941 | Leon's Tax Service | $203,866.18 |

---

[1] For 2021, Leon's Tax Service filed one W-2 for one employee and two W-2s for two employees for 2022, reporting a total of approximately $32,118 and $39,046 in social security wages, respectively. HAYNES did not report withholding any income, social security, or Medicare taxes from his employees' pay.

| | | | | |
|---|---|---|---|---|
| 7/11/2021 | 2021 Q2 | Form 941 | Leon's Tax Service | $258,280.33 |
| 9/30/2021 | 2021 Q3 | Form 941 | Leon's Tax Service | $243,071.32 |
| 1/3/2022 | 2021 Q4 | Form 941 | Leon's Tax Service | $281,378.91 |
| 6/7/2022 | 2022 Q1 | Form 941 | Leon's Tax Service | $175,246.60 |
| 7/6/2022 | 2022 Q2 | Form 941 | Leon's Tax Service | $274,309.42 |
| 10/9/2022 | 2022 Q3 | Form 941 | Leon's Tax Service | $185,116.84 |
| 2/15/2021 | 2020 Q2 | Form 941 | CNL Rentals | $73,186 |
| 2/15/2021 | 2020 Q3 | Form 941 | CNL Rentals | $57,538.61 |
| 2/15/2021 | 2020 Q4 | Form 941 | CNL Rentals | $68,866.16 |
| 5/29/2021 | 2021 Q1 | Form 941 | CNL Rentals | $117,271.88 |
| 7/11/2021 | 2021 Q2 | Form 941 | CNL Rentals | $184,113.76 |
| 9/28/2021 | 2021 Q3 | Form 941 | CNL Rentals | $200,729.32 |
| 1/3/2022 | 2021 Q4 | Form 941 | CNL Rentals | $215,954.27 |
| 6/7/2022 | 2022 Q1 | Form 941 | CNL Rentals | $181,559.03 |
| 1/25/2023 | 2022 Q2 | Form 941 | CNL Rentals | $105,916.03 |
| 10/9/2022 | 2022 Q3 | Form 941 | CNL Rental | $112,823.22 |
| 7/12/2021 | 2020 Q2 | Form 941 | GHP | $58,212.50 |
| 7/11/2021 | 2020 Q3 | Form 941 | GHP | $42,320.26 |
| 7/11/2021 | 2020 Q4 | Form 941 | GHP | $42,748.88 |
| 7/12/2021 | 2021 Q1 | Form 941 | GHP | $59,018.50 |
| 7/12/2021 | 2021 Q2 | Form 941 | GHP | $62,858.83 |
| 10/23/2021 | 2021 Q3 | Form 941 | GHP | $210,535.01 |
| 1/3/2022 | 2021 Q4 | Form 941 | GHP | $195,140.16 |
| 6/6/2022 | 2022 Q1 | Form 941 | GHP | $114,614.83 |
| 7/6/2022 | 2022 Q2 | Form 941 | GHP | $175,204.87 |
| 10/9/2022 | 2022 Q3 | Form 941 | GHP | $185,099.86 |

42. These false tax returns caused the U.S. Treasury to mail tax refund checks to HAYNES. On or about the following dates, the U.S. Treasury mailed checks from the Department of Treasury, Bureau of Fiscal Services in Kansas City, Missouri to HAYNES in New Jersey (all figures are approximate):

| Tax Period | Business | Approx. Date U.S. Treasury Check Issued | Location Check Mailed From | Location Check Mailed To | Amount of Check Issued |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 2020 Q2 | Leon's Tax Services Company | 12/22/2020 | Kansas City, Missouri | Bogota, New Jersey | $78,838.96 |
| 2020 Q3 | Leon's Tax Services Company | 12/17/2020 | Kansas City, Missouri | Bogota, New Jersey | $63,736.96 |
| 2020 Q4 | Leon's Tax Services Company | 2/23/2021 | Kansas City, Missouri | Bogota, New Jersey | $35,362.88 |
| 2021 Q1 | Leon's Tax Services Company | 5/252021 | Kansas City, Missouri | Bogota, New Jersey | $199,209.50 |
| 2021 Q2 | Leon's Tax Services Company | 8/24/2021 | Kansas City, Missouri | Bogota, New Jersey | $254,117.36 |
| 2022 Q3 | Leon's Tax Services Company | 11/22/2022 | Kansas City, Missouri | Bogota, New Jersey | $160,230.13 |
| 2020 Q2 | CNL Rentals | 3/23/2021 | Kansas City, Missouri | Teaneck, New Jersey | $71,417.00 |
| 2020 Q3 | CNL Rentals | 3/30/2021 | Kansas City, Missouri | Teaneck, New Jersey | $56,056.71 |
| 2020 Q4 | CNL Rentals | 8/10/2021 | Kansas City, Missouri | Bogota, New Jersey | $68,014.16 |
| 2021 Q2 | CNL Rentals | 8/24/2021 | Kansas City, Missouri | Bogota, New Jersey | $181,213.03 |
| 2021 Q4 | CNL Rentals | 2/22/2022 | Kansas City, Missouri | Bogota, New Jersey | $195,967.52 |

43. HAYNES received at least approximately $1,428,592.21 in refunds to which he was not entitled.

44. HAYNES knew that he submitted false forms to the IRS. When interviewed, HAYNES admitted to law enforcement that he had researched COVID-Related Tax Credits and was familiar with the law related to them. Moreover, on or about the following dates, the Social Security Administration ("SSA") sent letters to HAYNES regarding the businesses listed below. In each letter, the SSA informed HAYNES that the wage information reported on the Forms 941 filed with the IRS did not match the wages that were reported to the SSA on forms W-2 and requested that he fill out a questionnaire:

| Date | Tax Period | Entity |
|---|---|---|
| July 1, 2022 | 2020 | Leon's Tax Services |

| July 1, 2022 | 2020 | CNL Rentals |
| --- | --- | --- |
| Feb. 25, 2022 | 2020 | CNL Rentals |
| Dec. 23, 2022 | 2020 | CNL Rentals |
| Jan. 20, 2023 | 2020 | Leon's Tax Services |
| Feb. 10, 2023 | 2020 | CNL Rentals |
| Feb. 24, 2023 | 2021 | CNL Rentals |

45. Following HAYNES' receipt of the two July 1, 2022 letters referenced above, HAYNES returned two questionnaires to the SSA. On each questionnaire, HAYNES made the following admissions about the false documents he had submitted to the IRS:

> I am the owner and operator of the said business listed on this form. I certify that the compensation that was reported to Social Security is attributed to the Employee Retention Credit and the Family and Sick leave. Furthermore, the compensation that was reported is inaccurate.

46. Over the course of the scheme, HAYNES filed for $4,330,239.67 in tax refunds based on the COVID-Related Tax Credits for his three businesses. As a result, HAYNES caused the U.S. Treasury to disburse at least approximately $1,428,592.21 to HAYNES. In total over the course of the scheme, HAYNES prepared and filed at least 1,387 false Forms 941, claiming a total of approximately $124,751,995.08 in tax refunds to which HAYNES and his clients were not entitled, causing the U.S. Treasury to disburse at least $31.6 million in tax refunds.